# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| MICROSPHERIX LLC,<br><br>   Plaintiff,<br><br>   *v.*<br><br>MERCK SHARP & DOHME CORP.,<br>MERCK SHARP & DOHME B.V.,<br>ORGANON USA, INC., AND ORGANON<br>USA, LLC<br><br>   Defendants. | Civil Action No. 2:17-cv-03984 (RMB)<br>(JBC) |

## JOINT FINAL PRETRIAL ORDER

   The following shall constitute the Final Pretrial Order pursuant to Rule 16, Federal Rules of Civil Procedure. This Final Pretrial Order shall govern the conduct of the trial of this case. Amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice. *See* Fed. R. Civ. P. 16(e). The parties (together, "the parties") are Plaintiff Microspherix LLC ("Microspherix") and Defendants Merck Sharp & Dohme Corp., Merck Sharp & Dohme B.V., Organon USA, Inc., and Organon USA, LLC (collectively, "Organon"). Counsel are urged to move to amend in a timely fashion any portion of the Order that must be changed or modified between the filing of the Order and the trial date.

**APPEARANCES:**

| **Counsel for Microspherix**: | **Counsel for Organon**: |
|---|---|
| Brian D. Sieve, P.C.<br>Marcus E. Sernel, P.C.<br>Eric D. Hayes, P.C.<br>Tasha F. Gerasimow<br>Xaviere Giroud | Cynthia S. Betz<br>Mark M. Makhail<br>MCCARTER & ENGLISH, LLP<br>Four Gateway Center<br>100 Mulberry St. |

Sadaf Misbah
Tareq M. Alosh
KIRKLAND & ELLIS LLP
300 N. LaSalle Dr.
Chicago, IL 60654
(312) 862-2000
bsieve@kirkland.com
msernel@kirkland.com
ehayes@kirkland.com
tasha.gerasimow@kirkland.com
xaviere.giroud@kirkland.com
sadaf.misbah@kirkland.com
tareq.alosh@kirkland.com

Christopher R. DeCoro
Sam Kwon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
christopher.decoro@kirkland.com
sam.kwon@kirkland.com

Diva R. Hollis
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
(202) 389-5000
diva.hollis@kirkland.com

Newark, New Jersey 07102
Tel: (973) 622-4444
cbetz@mccarter.com
mmakhail@mccarter.com

Y. Ernest Hsin (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Tel: (415) 393-8200
ehsin@gibsondunn.com

Mark Reiter (*admitted pro hac vice*)
Veronica S. Moyé
Betty X. Yang (*admitted pro hac vice*)
Ashbey N. Morgan (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel: (214) 698-3100
mreiter@gibsondunn.com
vmoye@gibsondunn.com
byang@gibsondunn.com
anmorgan@gibsondunn.com

Andrew P. Blythe (*admitted pro hac vice*)
Nathaniel R. Scharn (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
Tel: (949) 451-3800
ablythe@gibsondunn.com
nscharn@gibsondunn.com

## I.    JURISDICTION AND BRIEF SUMMARY OF THE CASE

1.    This is an action for patent infringement arising out of the patent laws of the United States, 35 U.S.C. §§ 101 *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). For purposes of this action only, personal jurisdiction is not disputed by either party.

2.      Microspherix alleges that Organon is now and has been directly and/or indirectly infringing U.S. Patent Nos. 8,821,835 ("the '835 patent"), 9,636,401 ("the '401 patent"), and 9,636,402 ("the '402 patent") (collectively, the "Patents-in-Suit"), and that the infringement is willful.  Microspherix seeks in its prayer for relief damages, and a finding that this case is exceptional entitling it to reasonable attorneys' fees and expenses.

3.      Microspherix asserts the following claims: claims 1 and 16 of the '835 patent; claims 1, 13, 16, 18, and 20 of the '401 patent; and claims 6 and 9 of the '402 patent.  Following rulings on IPR estoppel and other pretrial issues, Microspherix expects to further streamline its asserted claims for trial to no more than 6 claims.  [**Organon's Position:** Organon requests that Microspherix identify the 6 claims it will assert at trial by October 6.]

4.      Organon denies infringement, has asserted counterclaims of noninfringement and invalidity, and asserts additional affirmative defenses in law and equity.  Organon further contends that the Asserted Claims are anticipated and/or rendered obvious by the prior art, are invalid because others invented the claimed invention first, invalid because Dr. Kaplan derived the invention from another, and invalid because they fail to satisfy the written description and enablement requirements.  Organon seeks a finding that this case is exceptional entitling it to reasonable attorneys' fees and expenses.

5.      The Court will conduct a hearing to address IPR estoppel and *Daubert* issues regarding the opinions of Microspherix's damages expert, Kimberly Schenk, on October 13, 2023.  On IPR estoppel, Microspherix expects to call Mr. Eugene Lhymn and Organon expects to call Ms. Andrea Davis to testify.  With respect to the *Daubert* issue, Ms. Schenk will be available for the hearing and can address any of the *Daubert* issues raised by Organon in its letter dated August 11, 2023 and counsel will be prepared to present argument on these issues.

6.     At the pretrial conference, Microspherix plans to discuss whether the Court will require it to call foundational or custodial witnesses (live or via deposition) to lay a foundation for the admission of documents authored and produced by Defendants, as well as FDA communications regarding Organon products, prior to admission with expert witnesses. Microspherix would prefer that the parties agree to the admissibility of such documents via experts without the need to call live witness, records custodians, or play depositions solely for purposes of establishing foundation or other admissibility requirements.  Such an approach will streamline the trial significantly. Organon believes that, to the extent there are questions about admissibility of documents, such questions depend on the nature of the document and the purpose for which Microspherix intends to introduce it.   Accordingly, Organon cannot agree to Microspherix's categorical proposal.  For example, several FDA documents Microspherix may seek to introduce are objectionable under, *inter alia*, Federal Rules of Evidence 403 and 802, and Microspherix may seek to introduce them through witnesses who are not qualified to analyze them.

### A.     Microspherix's Positions on Issues to be Presented to the Jury

7.     Organon does not have a cognizable derivation argument.  Organon's argument that the asserted Kaplan patent claims are "derived" from Organon's commercial Nexplanon product after 2012 assumes that Microspherix cannot claim priority for its asserted claims back to ***any*** of its priority filings in 2000, 2001, 2002 or 2003.  To the extent Organon is able to prove such lack of priority on the basis of lack of written description—which would equate to establishing lack of written description in the patents as issued—then it follows that Organon will have proven invalidity under 35 U.S.C. §112.   Thus, there is no separate or legally cognizable derivation defense.  Moreover, Organon should be precluded from arguing or  suggesting that any effort to draft claims to cover the Nexplanon product is improper.  *See, e.g.*, *PIN/NIP, Inc. v. Platte Chem.*

4

*Co.*, 304 F.3d 1235, 1247 (Fed. Cir. 2002) ("[I]t is legitimate to amend claims or add claims to a patent application purposefully to encompass devices or processes of others."); *Seagen Inc. v. Daiichi Sankyo Co.*, 2022 WL 2789901, at *7 (E.D. Tex. July 15, 2022) ("The Federal Circuit and courts in this District have found that there is nothing unusual or improper about drafting claims to cover a competitor's product, as long as there is a basis in the pending application, even if that claim has never appeared before in the family."). These arguments ignore the law, would confuse the jury, and should be precluded.

8.    The other issues raised by Organon in paragraphs 10-13 below were first introduced into a draft of the Joint Pretrial Order the day before its submission was due, and Microspherix thus does not seek to substantively respond to the issues herein. All of these issues are belatedly and improperly raised at this time. The Court already addressed the "pores" issue referenced in paragraph 11 that was raised by Organon in its letter to the Court dated August 11, 2023, and Organon's counsel agreed this was an ***infringement*** (not claim construction) issue that could be revisited at the close of Microspherix's case. 9/19/23 Tr. at 65:14–22. The other issues (while meritless in any event) could and should have been raised via summary judgment or other such motion practice, and thus have been waived as a result of Organon's failure to seek leave to do so consistent with Judge Bumb's Scheduling Order of March 16, 2023 (Dkt. 200) and Text Order of September 7, 2023 (Dkt. 223) (reminding of September 8 deadline and indicating argument on all such motions would be heard at a conference on September 19).

**B.    Organon's Positions on Issues to be Presented to the Jury**

9.    **Organon's Derivation Defense.** Microspherix may not decide which defenses Organon can present to the jury, and may not preclude Organon from presenting its derivation defense simply because the asserted patents may also be invalid on another basis, such as lack of

enablement and written description under § 112.  The patent laws codify derivation at 35 U.S.C. § 102(f) (pre-AIA).  Although there are overlapping factual and legal issues, this is a separate invalidity defense from lack of enablement and insufficient written description, both of which are codified at 35 U.S.C. § 112.  Additionally, Organon included its derivation defense in its invalidity contentions, and Microspherix has long been on notice of it.  As reflected in the jury instructions, derivation requires evidence of (1) prior conception of the invention by another inventor in the United States; and clear and convincing evidence of (2) communication of that conception to Dr. Kaplan.  D.I. 246, Proposed Preliminary Jury Instruction No. 23.  Accordingly, Organon's evidence will show that Dr. Kaplan drafted his claims to attempt to cover Nexplanon after the concept of Nexplanon had been communicated to him.  Microspherix has no basis to preclude Organon from presenting evidence to support its defense under § 102(f), and may not through this Pretrial Order obtain summary judgment in disguise as to Organon's derivation defense.

10.    **Microspherix's Arguments Not Disclosed in its Infringement Contentions.**

Microspherix should not be permitted to present testimony and argument regarding infringement theories that were not disclosed in its infringement contentions, including testimony and argument that (1) the entire Nexplanon implant is the claimed "marker component," (2) the free volume (i.e., the microscopic space between molecules) of Nexplanon's EVA skin constitutes the claimed "pores" or "openings," or (3) any element is met under the doctrine of equivalents.  *TQ Delta, LLC v. ADTRAN, Inc.*, 2019 WL 4346530, at *2 (D. Del. Sept. 12, 2019) ("Opening expert reports are not the appropriate time to disclose new infringement allegations.").  To that end, a Microspherix's infringement contentions must state "*specifically* where *each limitation* of each asserted claim is found."  L. Pat. R. 3.1(c) (emphasis added).  Specificity is likewise required for arguments under the doctrine of equivalents, as Local Patent Rule 3.1(e) requires patentees to state "whether **each**

limitation of **each** asserted claim **is alleged** to be literally present or **present under the doctrine of equivalents**." L. Pat. R. 3.1(e) (emphasis added); *Razor USA LLC v. DGL Grp., Ltd.*, 2022 WL 44627, at *6 (D.N.J. Jan. 5, 2022) ("Courts in this district have emphasized that a general assertion of infringement under a doctrine of equivalents theory does not satisfy the requirements of Local Rule 3.1(e)."). None of the above-mentioned arguments was specifically disclosed in Microspherix's infringement contentions as required, and therefore may not be presented to the jury. *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, 2017 WL 5886004, at *4 (D.N.J. Nov. 29, 2017) ("[A] mere reservation of the right to assert [an infringement theory] is insufficient to satisfy the exacting requirements of L. Pat. R. 3.1."). Organon proceeded through fact discovery and into expert discovery—including in preparing its Rule 30(b)(6) witnesses for deposition and preparing its opening expert reports—based on the disclosure in Microspherix's infringement contentions, and is severely prejudiced by Microspherix's untimely shift in its infringement theories, which must be stricken. *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 485 F. Supp. 3d 505, 532 (D.N.J. 2020) (Bumb, C.J.) ("[T]he Court's Local Patent Rules are designed to prevent gamesmanship."). Additionally, Microspherix's untimely disclosure of these infringement theories deprived Organon of the ability to seek case claim constructions for pores and openings under the deadlines of the Court's scheduling order.[1]

11.    **Construction of "Pores" and "Openings" in Light of Microspherix's Prosecution Disclaimer.** Organon did not have the opportunity to address Microspherix's new argument on pores and openings at claim construction, and Microspherix has disclaimed through

---

[1] Microspherix's new marker component argument is directly contrary to the *stipulated* construction for that term—"the *part* of the seed/strand that includes a marker" (D.I. 174)—which is another reason this untimely argument should be precluded. Organon could not have predicted that Microspherix would contradict the construction it stipulated to.

argument before the PTAB the literal scope of the claims as to these elements. In particular, during *inter partes* review proceedings in which it preserved the patentability of the asserted claims over the grounds alleged therein, Microspherix argued that the same EVA skin that it now accuses as containing pores or openings—embodied in the De Nijs patent covering Implanon—did not have pores or openings. The Court should therefore construe the terms pores and openings to clarify that free volume is not within the scope of these elements. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008 ("[A] court has the duty to resolve the parties' claim construction disputes so the issues are not litigated before the jury."); *LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*, 2014 WL 183823, at *21 (D.N.J. Jan. 16, 2014) (same)). The Court has indicated that it plans to resolve this claim construction dispute before the case is given to the jury for deliberations.

12.   **Willful Infringement.** Microspherix has stated that it intends to prove willfulness by pointing to a variety of Merck patent documents that purportedly show Merck was aware of certain *unasserted* patents, because Organon received notice of the patents through Microspherix's complaint, and because Organon has not produced and relied on an opinion of counsel in this litigation. None of these is a legally permissible argument for willfulness, and there is no actual evidence of willful infringement in the case. Nonetheless, the suggestion of willful infringement and instruction on that issue are potentially inflammatory and would be prejudicial to Organon, and should therefore excluded under Federal Rule of Evidence 403. First, defendant Merck's alleged awareness of *unasserted* patent documents related to Dr. Kaplan (as a result of their being cited on Merck's patent documents) is not evidence of willful infringement of the *Asserted* Patents. *See Plexxikon Inc. v. Novartis Pharms. Corp.*, 2021 WL 2224267, at *8 (N.D. Cal. June 2, 2021) (precluding reliance on evidence suggesting knowledge of patents that were "not the asserted

8

ones"). Second, the mere filing of a complaint is insufficient to demonstrate willful infringement. *Wrinkl, Inc. v. Facebook, Inc.*, 2021 WL 4477022, at *8 (D. Del. Sept. 20, 2021) ("But if all that is required [to prove willfulness] is the filing of a complaint and a plausible allegation of infringement, then every case would be a willful infringement case."). As such, multiple courts in this circuit that have concluded after detailed analysis that a defendant's knowledge of the Asserted Patents for willfulness cannot be "based solely on the content of . . . a prior version of the complaint filed in the same lawsuit." *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249–52 (D. Del. 2021); *Wrinkl*, 2021 WL 4477022, at *5–8; *iFIT Inc. v. Peloton Interactive, Inc.*, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022); *see also Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 803 n.9 (D.N.J. 2022), appeal docketed No. 22-2278 (Fed. Cir. Sept. 29, 2022). Third, as codified in 35 U.S.C. § 298, patentees are categorically precluded from arguing that failure to produce an opinion of counsel is a basis for willful infringement. 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent."). Yet Microspherix attempts to make that exact, statutorily prohibited argument. Accordingly, Microspherix should not be permitted to argue willful infringement, and the jury should not be instructed on it.

13. **Proposed Final Jury Instructions on "Communications With Court" (D.I. 246, Proposed Instruction Nos. 14 & 34).** Organon believes this instruction unnecessarily suggests that the jury should communicate with the Court during deliberations, and should not be included in the final jury instructions.

II.    **STIPULATED FACTS**

The parties stipulate to the following facts, which require no proof at trial.  The parties reserve their right to supplement this list of facts.

A.    **The Parties**

14.    Plaintiff Microspherix is a Florida corporation having a principal place of business at 21283 Rockledge Lane, Boca Raton, Florida 33428 in Palm Beach County.

15.    Dr. Edward Kaplan formed Microspherix in 2001 and is the sole owner of Microspherix.

16.    Defendant Merck Sharp & Dohme Corp. is a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business at One Merck Drive, Whitehouse Station, New Jersey 08889-0100.

17.    Defendant Merck Sharp & Dohme B.V. is incorporated in the Netherlands with a place of business at Waarderweg 39, 2031 BN Haarlem, Netherlands.

18.    Defendant Organon USA, LLC is a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business at 30 Hudson Street, Jersey City, New Jersey, 07302.

19.    Defendant Organon USA, Inc. was a corporation organized under the laws of the State of New Jersey, formerly having a principal place of business at 2000 Galloping Hill Road, Kenilworth, New Jersey, 07033 and One Merck Drive, Whitehouse Station, New Jersey 08889-0100.  Organon USA, Inc., is no longer an existing entity and was merged into Organon USA, LLC on October 15, 2020.

20.    Organon USA, LLC is presently the "Labeler Name" for Nexplanon in the National Drug Code Directory.

21.     Schering-Plough acquired Organon BioSciences from Akzo Nobel in 2007.

22.     Merck & Co., Inc. and Schering-Plough Corporation merged in 2009.

23.     Merck & Co., Inc. spun off Organon & Co. in 2021.

**B.     The Patents-in-Suit**

24.     U.S. Patent No. 8,821,835 ("the '835 patent") is entitled "Flexible and/or Elastic Brachytherapy Seed or Strand."

25.     The '835 patent was issued by the U.S. Patent and Trademark Office ("USPTO") on September 2, 2014.

26.     U.S. Patent Application No. 13/916,916 ("the '916 application") that led to the '835 patent was filed on June 13, 2013.

27.     The '916 application states that it is a continuation of U.S. Patent Application No. 12/823,700, filed on June 25, 2010.

28.     U.S. Patent Application No. 12/823,700 states that it is a continuation of U.S. Patent Application No. 10/665,793, filed on September 19, 2003.

29.     U.S. Patent Application No. 10/665,793 states that it is a continuation-in-part of U.S. Patent Application No. 09/861,326.

30.     U.S. Patent Application No. 10/665,793 states that it is also a continuation-in-part of U.S. Patent Application No. 09/861,196.

31.     U.S. Patent No. 9,636,401 ("the '401 patent") is entitled "Flexible and/or Elastic Brachytherapy Seed or Strand."

32.     The '401 patent was issued by the USPTO on May 2, 2017.

33.     U.S. Patent Application No. 14/473,159 ("the '159 application") that led to the '401 patent was filed on August 29, 2014.

34.    The '159 application states that it is a continuation of the '916 application.

35.    U.S. Patent No. 9,636,402 ("the '402 patent") is entitled "Flexible and/or Elastic Brachytherapy Seed or Strand."

36.    The '402 patent was issued by the USPTO on May 2, 2017.

37.    U.S. Patent Application No. 14/711,658 ("the '658 application") that led to the '402 patent was filed on May 13, 2015.

38.    The '658 application states that it is a continuation of the '159 application.

39.    Provisional Application No. 60/412,050, listed as Related U.S. Application Data on the face of the '835, '401, and '402 patents, was filed on September 19, 2002.

40.    Provisional Application No. 60/249,128, listed as Related U.S. Application Data on the face of the '835, '401, and '402 patents, was filed on November 16, 2000.

41.    Edward J. Kaplan is the named inventor of the '835, '401, and '402 patents.

42.    Microspherix LLC is the assignee of the '835, '401, and '402 patents.

**C.    *Inter Partes* Review**

43.    Petitions were filed for *inter partes* review (IPR) of the '835 patent on February 9, 2018, of the '401 patent on December 29, 2017, and on the '402 patent on December 22, 2017.

44.    The Patent Trial and Appeal Board held that Petitioner did not show that claims 1–4, 9–12, and 14–20 of the '835 patent, claims 1–5 and 9–25 of the '401 patent, and claims 6 and 9 of the '402 patent are unpatentable, but did show that claims 1–5, 7, 8, and 10–19 of the '402 patent are unpatentable based on the grounds presented in the petitions.

45.    The Federal Circuit affirmed the Board's decisions.

### D.    Claim Construction

46.    On September 8, 2020, the parties in the Joint Claim Construction

Statement (Dkt. 94) agreed that the terms below should be construed as follows:

| Claim Term | Agreed Definition |
|---|---|
| **"encapsulated"**<br><br>'402 Patent claims 6 and 9 | "enclosed or contained within" |
| **"seed"**<br><br>'835 Patent claims 1, 16 | "implant shaped to pass through a needle bore" |
| **"strand"**<br><br>'401 Patent claims 1, 13, 16, 18, 20<br>'402 Patent claims 6 and 9 | "elongated implant" |

47.    On March 1, 2022 the Court entered the following stipulated claim

constructions:

| Claim Term | Agreed Definition |
|---|---|
| **"marker component"**<br><br>'401 Patent claims 1, 13, 16, 18, and 20<br>'835 Patent claims 1 and 16 | "the part of the seed/strand that includes a marker"<br><br>(D.I. 174) |
| **"radio-opaque" and "radiopaque"**<br><br>'402 Patent claims 6 and 9<br>'835 Patent claim 16 | "capable of visualization by conventional x-ray imaging"<br><br>(D.I. 174) |

48.    On February 27, 2023, the Court ordered that the claim terms listed below

be construed as follows:

| Claim Term | Ordered Construction |
|---|---|
| **"target tissue"**<br><br>'401 Patent claims 1, 13, 16, and 18<br>'835 Patent claims 1 and 16 | "tissue targeted for treatment into which implant is implanted"<br><br>(D.I. 194) |
| **"seed, for implantation into a subject"**<br><br>'835 Patent claims 1 and 16 | Plain and ordinary meaning (D.I. 194) |
| **"strand for administration of a therapeutic agent to a subject in need thereof"**<br><br>'402 Patent claims 6 and 9 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"strand for implantation into a subject"**<br><br>'401 Patent claims 1, 13, 16, and 18 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"therapeutic agent"**<br><br>'402 Patent claims 6 and 9<br>'401 Patent claims 1, 13, 16, 18, and 20<br>'835 Patent claims 1 and 16 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"prophylactic agent"**<br><br>'401 Patent claims 1, 13, 16, 18, and 20<br>'835 Patent claims 1 and 16 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"hollow interior"**<br><br>'401 Patent claims 1, 13, 16, 18, and 20<br>'835 Patent claims 1 and 16 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"[marker component] . . . having a substantially continuous wall bounding a hollow interior"**<br><br>'401 Patent claims 1, 13, 16, and 18<br>'835 Patent claims 1 and 16 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"[marker component] . . . having a substantially continuous wall along the length, the substantially continuous wall bounding a hollow interior"**<br><br>'401 Patent claim 20 | Plain and ordinary meaning<br><br>(D.I. 194) |

| Claim Term | Ordered Construction |
|---|---|
| **"polymeric coating"**<br><br>'402 Patent claims 6 and 9 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"rod"**<br><br>'402 Patent claims 6 and 9 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"flexible"**<br><br>'401 Patent claims 1 and 16 | Not indefinite; Plain and ordinary meaning<br><br>(D.I. 194) |
| **"marker"**<br><br>'401 Patent claims 1 and 16<br>'835 Patent claims 1, 3, 4, 10, 16, 17, and 20 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"radio-opaque material"**<br><br>'402 Patent claims 6 and 9 | Plain and ordinary meaning<br><br>(D.I. 194) |
| **"agent . . . selected from the group consisting of . . . radiopaque"**<br><br>'835 Patent claim 16<br><br>**"radio-opaque"** and **"radiopaque"** | Plain and ordinary meaning<br><br>(D.I. 194)<br><br>Plain and ordinary meaning<br><br>(D.I. 194) |

### E.    Organon's Accused Product

49.    On June 5, 2017, Microspherix filed a lawsuit alleging infringement of the Patents-in-Suit.

50.    Nexplanon is x-ray visible.

51.    Implanon was approved by the FDA on July 17, 2006.

52.    Nexplanon was approved by the FDA on May 31, 2011.

53.    The Implanon implant comprises an ethylene-vinyl acetate ("EVA") core containing etonogestrel dispersed therein, and a polymer skin of EVA surrounding that core, with the implant having open ends.

15

54.    The Nexplanon implant comprises an ethylene-vinyl acetate ("EVA") core containing etonogestrel and barium sulfate dispersed therein, and a polymer skin of EVA surrounding that core, with the implant having open ends.

55.    Etonogestrel is a synthetic biologically active metabolite of a synthetic hormone (desogestrel).

56.    The original new drug application for Implanon was submitted to the FDA on September 30, 2003.

57.    The supplemental NDA for Nexplanon was submitted to the FDA on July 29, 2009.

## III.    PLAINTIFF'S CONTESTED FACTS

Microspherix's statement of the facts it intends to prove at trial is attached as Exhibit 3. Microspherix reserves the right to revise these contested facts in response to the Court's orders and other rulings, or as otherwise appropriate.

## IV.    DEFENDANT'S CONTESTED FACTS

Organon's statement of the facts it intends to prove at trial is attached as Exhibit 4. Organon reserves the right to revise these contested facts in response to the Court's orders and other rulings, or as otherwise appropriate.

## V.    FACT WITNESSES AND SUMMARY OF TESTIMONY

Absent leave of Court, only the witnesses listed herein will be permitted to testify at the time of trial.  The listing of a witness on a party's witness list does not require the party to call that witness to testify, either in person or by deposition.  In the event a party seeks to call a substitute witness, the parties agree they will make an application to the Court to amend the Joint Final Pretrial Order.

A.    **Plaintiff's Fact Witnesses**

1.  **Fact Witnesses Who Will Be Called for Live Testimony**

| Witness | Summary of Testimony |
|---|---|
| **Edward Kaplan**<br><br>c/o Kirkland & Ellis, LLP<br>300 N. LaSalle Dr., Chicago IL 60654 | Dr. Kaplan is a practicing physician and a named inventor on the patents asserted against Organon.  In general, Dr. Kaplan will testify regarding the history of his inventions and protecting those inventions with patents, the conception of the inventions in the asserted patents, the use of a radiopaque marker to help localize an implanted medical device in a patient's body, and his efforts to use and commercialize the inventions.  Dr. Kaplan will also discuss his formation of Microspherix LLC and his assignment of the asserted patents to Microspherix. |

2.  **Fact Witnesses Who May Be Called for Live Testimony**

| Witness | Summary of Testimony |
|---|---|
| **Patrea Pabst**<br><br>c/o Kirkland & Ellis, LLP<br>300 N. LaSalle Dr., Chicago IL 60654 | Patrea Pabst is a practicing patent attorney who was involved in the prosecution of the Asserted Patents.  Plaintiff may call Ms. Pabst to testify to the prosecution of the Asserted Patents. |
| **Umer Raffat** | Mr. Raffat is a Senior Managing Director at Evercore ISI.  Plaintiff may call Mr. Raffat to testify regarding his knowledge of Organon, Nexplanon, the market for Long-Acting Reversible Contraceptives ("LARC"), and the value of the patented technology to Organon. |

3.  **Fact Witnesses Who May Be Called by Deposition**

Information concerning Plaintiff's witnesses who may be called by deposition is attached as Exhibit 5A.

| Witness | Summary of Testimony |
|---|---|
| **Lisa French** | Ms. French was the Unit Lead for Organon's U.S. Women's Health Business and the former Associate Vice President at Merck. Plaintiff may call Ms. French to testify on financial matters regarding the Accused Product. |

17

| Witness | Summary of Testimony |
|---|---|
| **Jill Freymuller** | Ms. Freymuller is the Associate Director of U.S. Regulatory and Global Product Strategy at Organon.  Plaintiff may call Ms. Freymuller to testify on regulatory issues regarding the Accused Product. |
| **Ruud Groenewegen** | Mr. Groenewegen is the Quality Compliance Lead at Organon. Plaintiff may call Mr. Groenewegen to testify regarding the manufacturing and development of the Accused Product. |
| **Simon Holland** | Mr. Holland is the Vice President of Women's Health at Organon. Plaintiff may call Mr. Holland to testify regarding the development of the Accused Product. |
| **Ed Saltus** | Mr. Saltus is the Director of Global Regulatory Affairs at Merck. Plaintiff may call Mr. Saltus to testify on regulatory issues regarding the Accused Product. |
| **Earyn Thornton** | Ms. Thornton is the Associate Director of Litigation at Organon. Plaintiff may call Ms. Thornton to testify on information provided to, received from, and relied upon by Organon from financial analysts, and facts regarding product liability litigation involving Implanon. |
| **Harm Veenstra** | Mr. Veenstra is the Associate Director of Global Technical Operations at Merck.  Plaintiff may call Mr. Veenstra to testify on the development of the Accused Product. |
| **Edio Zampaglione** | Mr. Zampaglione is Vice President of Global Medical Affairs and Outcomes Research at Organon.  Plaintiff may call Mr. Zampaglione to testify on the development of the Accused Product. |

#### 4.  Plaintiff's Objections to Defendants' Witness List

Plaintiff objects to Defendants calling any witness by deposition unless the witness is unavailable pursuant to Federal Rule 32. Plaintiff further objects to Defendants' decision to list all its potential fact witnesses as "may call," without designating any specific "will call" fact witnesses in the pretrial order. This approach essentially equates to nondisclosure, is inconsistent with both the intent and purpose of the pretrial disclosure requirements, and unduly prejudices the Plaintiff's

ability to effectively prepare for trial. Plaintiff reserves the right to seek appropriate relief from the Court if the Defendants persist with this gamesmanship.

Plaintiff reserves the right to object to Defendants' use of any witness or testimony that violates the Federal Rules of Evidence, the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of New Jersey, the Pretrial Order entered in this case, and any existing or future rulings or orders of the Court (including rulings on motions in limine). Plaintiff further objects to Defendant presenting expert testimony that exceeds the scope of opinions disclosed under Fed. R. Civ. P. 26(a)(2)(B).

### B.    Defendants' Fact Witnesses and Objections to Plaintiff's Witness List

#### 1.    Defendants' Objections to Plaintiff's Witness List

Organon objects to Microspherix's identification of Patrea Pabst to the extent Microspherix intends to offer testimony regarding alleged standard practice or commonplace practices among patent prosecution attorneys as improper expert testimony.  Organon objects to Microspherix's identification of Umer Raffat as improper expert testimony and because Mr. Raffat was not timely disclosed as required under Rule 26.  Further, Microspherix has indicated that it intends to call Mr. Raffat to provide damages opinions without having submitted an expert report as required under Federal Rule of Civil Procedure 26 and the scheduling order or otherwise demonstrating that Mr. Raffat's analysis satisfies the requirements of Federal Rule of Evidence 702.

#### 2.    Plaintiff's Responses to Defendants' Objections to Plaintiff's Witness List

Any complaints about untimeliness are entirely of Organon's own making, as the need to potentially call Mr. Raffat results from unfounded evidentiary objections and Organon's prior discovery abuse as detailed in a letter to the Court dated May 16, 2023.

#### 3.    Fact Witnesses Who Will be Called for Live Testimony

| Witness | Summary of Testimony |
|---|---|
| **Simon Holland** | Historical and current business and marketing efforts and decisions for Organon's women's health portfolio, including Implanon and Nexplanon; sales and marketing for Implanon and Nexplanon; Merck and Organon's knowledge of and relationship to Microspherix; relationship between Merck, Organon, and other related entities; clinical training program for Implanon and Nexplanon |
| **Ruud Groenewegen** | Conception and reduction to practice of X-ray visible Implanon, including Organon's development, design, research, and testing efforts; decisions surrounding the addition of barium sulfate and new applicator; characteristics and testing of Implanon and Nexplanon, including the manufacturing process; non-infringing alternatives |
| **Ed Saltus** | Conception and reduction to practice of X-ray visible Implanon, including Organon's development, design, research, and testing efforts; decisions surrounding the addition of barium sulfate and new applicator; regulatory strategy and history of Implanon and Nexplanon; regulatory submissions and correspondence regarding Implanon and Nexplanon in the United States; regulatory aspects of the development of Implanon and Nexplanon |
| **Harm Veenstra** | Conception and reduction to practice of X-ray visible Implanon, including Organon's development, design, research, and testing efforts; decisions surrounding the addition of barium sulfate and new applicator; characteristics and testing of Implanon and Nexplanon, including the manufacturing process; development of Nexplanon, including the '037 patent |

**4.  Fact Witnesses Who May be Called for Live Testimony**

| Witness | Summary of Testimony |
|---|---|
| **Edio Zampaglione** | Regulatory strategy and history of Implanon and Nexplanon; regulatory submissions and correspondence regarding Implanon and Nexplanon in the United States; regulatory aspects of the development of Implanon and Nexplanon; clinical training programs for Implanon and Nexplanon |
| **Lisa French** | Sales and marketing for Implanon and Nexplanon; Merck and Organon's knowledge of and relationship to Microspherix; relationship between Merck, Organon, and other related entities |

| Jill Freymuller | Regulatory strategy and history of Implanon and Nexplanon; regulatory submissions and correspondence regarding Implanon and Nexplanon in the United States; regulatory aspects of the development of Implanon and Nexplanon |
|---|---|
| **Any witness included on Microspherix's witness list** | Organon incorporates by reference the summaries included in Organon's witness list. |

### 5. Fact Witnesses Who May Be Called by Deposition

| Witness | Summary of Testimony |
|---|---|
| **Edward Kaplan** | The asserted patents, including the state of the art at the time the applications for the asserted patents were filed, any work that led to the alleged inventions claimed therein, and financial matters related to alleged damages. |

*See* Exhibit 5B.

## VI.   EXPERT WITNESSES

Any expert not listed in this portion of the Joint Pretrial Order shall not be permitted to testify at the time of trial.  The *curriculum vitae* of each expert expected to testify at the time of trial is attached to this Final Pretrial Order as Exhibit 6.  The *curriculum vitae* or summary of the expert's qualifications may be read into the record at the time the expert takes the stand, and no opposing counsel shall be permitted to question the qualifications of the expert unless the basis of the objection is set forth in this Final Pretrial Order.

### A.    Plaintiff's Expert Witnesses

#### 1.  Expert Witnesses Who Will Be Called for Live Testimony

| Witness | Summary of Testimony |
|---|---|
| **Mansoor Amiji**<br><br>c/o Kirkland & Ellis, LLP<br>300 N. LaSalle Dr., Chicago IL 60654 | Dr. Amiji is a University Distinguished Professor and Professor of Pharmaceutical Science at Northeastern University.  Dr. Amiji will testify regarding the inventions claimed by the Asserted Patents, why the claims of the Asserted Patents are not anticipated or obvious over the prior art, and why the claims of the Asserted Patents are supported and enabled by the specifications of the Asserted Patents. |
| **Michael Cima**<br><br>c/o Kirkland & Ellis, LLP<br>300 N. LaSalle Dr., Chicago IL 60654 | Dr. Cima is a Professor of Materials Science and Engineering at the Massachusetts Institute of Technology ("MIT").  Dr. Cima will testify regarding his analysis of the level of skill of a person of ordinary skill in the art,  the Asserted Claims, the Asserted Patents, Nexplanon, proof of infringement, and lack of acceptability and availability of Organon's alleged non-infringing alternatives. |
| **Kimberly Schenk**<br><br>c/o Kirkland & Ellis, LLP<br>300 N. LaSalle Dr., Chicago IL 60654 | Ms. Schenk is a Certified Public Accountant and Vice President at Charles River Associates, a consulting firm that provides litigation support services.  Ms. Schenk will testify regarding damages owed  to Microspherix in the event Organon is found liable for infringement of the Asserted Patents at trial. |
| **Louis Weinstein**<br><br>c/o Kirkland & Ellis, LLP<br>300 N. LaSalle Dr., Chicago IL 60654 | Dr. Weinstein is a former obstetrics and gynecology physician and is currently a gynecologist at the Barrier Island Free Medical Clinic.  Dr. Weinstein will testify regarding objective indicia of non-obviousness related to the Asserted Patents from the perspective of a prescriber of the Accused Product  and acceptability and availability of Organon's alleged non-infringing alternatives. |
| **Sousan Sheldon**<br><br>c/o Kirkland & Ellis, LLP<br>300 N. LaSalle Dr., Chicago IL 60654 | Dr. Sheldon is a former official at the U.S. Food and Drug Administration ("FDA") where she served in both FDA's Center for Drug Evaluation and Research and Center for Devices and Radiological Health.  Dr. Sheldon will testify regarding the FDA's regulatory review process, the regulatory history of Implanon and Nexplanon, and the lack of acceptability and availability of Organon's alleged non-infringing alternatives. |

**B.    Defendants' Expert Witnesses and Objections to Plaintiff's Expert Witness List**

### 1. Defendants' Objections to Plaintiff's Expert Witness List

Organon objects to the admissibility of Kimberly Schenk's testimony and certain opinions of Louis Weinstein under *Daubert*, including for the reasons discussed in their letter filed on August 11, 2023.  Both experts have offered opinions they are not qualified by knowledge, skill, experience, training, or education as required under Federal Rule of Evidence 702 to offer opinions on, including Ms. Schenk's opinions related to regulatory and medical matters and Dr. Weinstein's opinions related to the number of patients who would have declined to use Implanon but would have otherwise used Nexplanon, as those opinions are not based on sufficient facts or data as required under Federal Rule of Evidence 702.  Additionally, Ms. Schenk's opinions are not the product of reliable principles and methods (or the reliable application thereof) and are not based on sufficient facts or data.  Defendants further object to the testimony of Drs. Louis Weinstein and Sousan Sheldon, as these experts' reports dated July 14, 2023 and August 4, 2023 were not timely served as required under Federal Rule of Civil Procedure 26 and the stipulated expert disclosure schedule.  D.I. 200.    Additionally, Dr. Weinstein's purported testimony regarding objective indicia of non-obviousness should be precluded, as he establishes no nexus to the claimed invention.

Microspherix indicated at the September 19, 2023 hearing that it may not call Drs. Weinstein and Sheldon in its case-in-chief.  *See* D.I. 244 at 67:16–19.  Organon objects to Microspherix's calling either expert in its rebuttal case, as their testimony relates to damages issues.  Specifically, these experts' testimony relates to Microspherix's argument that there were no acceptable noninfringing alternatives, which Microspherix's damages expert opined on affirmatively in her opening report (served on June 2, 2023) in connection with her reasonable

23

royalty analysis and *Georgia Pacific* factors 9, 10, and 15 (Schenk Opening Report ¶¶ 206–232, 247), and which Microspherix's infringement expert Dr. Michael Cima also opined on affirmatively in his opening report (also served on June 2, 2023).  Cima Opening Report ¶¶ 4, 25, 259–260.  Microspherix did not serve Dr. Weinstein's expert reports purporting to support this analysis until the rebuttal and reply round of expert reports on July 14, 2023 and August 4, 2023, and did not serve Dr. Sheldon's expert report purporting to support his analysis until the reply round of expert reports on August 4, 2023, however.  As noted above, these reports should be stricken, and these experts should not be permitted to testify at all.  To the extent they are permitted to testify regarding damages issues, such as noninfringing alternatives, however, they must do so in Microspherix's case-in-chief on damages.

Finally, Dr. Cima should not be permitted to testify regarding the purported level of ordinary skill in the art, as that is not relevant to his infringement analysis.

Microspherix contends that certain of Organon's challenges to the admissibility of Microspherix's experts' testimony are waived because they were not specifically identified in Organon's August 11, 2023 letter (D.I. 223).  However, Organon previewed in that letter that it "intend[ed] to move to strike and/or exclude additional portions of Microspherix's expert reports and will do so in the form of motions *in limine* per Judge Clark's recommendation."  *Id.* at 1 n.1. Although the Court has indicated that it will not entertain motions *in limine*, Organon maintains— and for the avoidance of doubt, does not waive—its objections to the admissibility of the expert testimony identified above.

### 2. Plaintiff's Responses to Defendants' Objections To Plaintiff's Expert Witness List

Chief Judge Bumb's Orders of March 16, 2023 (Dkt. 200) and September 7, 2023 (9/7/2023 Text Order) made clear that the parties needed to seek leave to raise any *Daubert* issues

by letter no later than September 8, 2023. Microspherix agrees that certain challenges were timely raised by Organon with respect to Ms. Schenk's opinions, and this *Daubert* challenge is scheduled to be addressed by Chief Judge Bumb at a hearing scheduled for October 13, 2023. Microspherix also will be prepared to address the issues raised with respect to the timing of the service of the various reports at this hearing on October 13, as it agrees this issue was also timely raised in Organon's August 11, 2023 letter. On the other hand, Organon has ***not*** previously sought leave of court to file, or otherwise alerted the court to, any *Daubert* challenges to the substance of the opinions of Drs. Weinstein, Sheldon, or Cima. As a result, Microspherix believes that all such challenges (which are meritless in any event) have been waited and should not be considered by the Court at this time.

### 3.    Expert Witnesses Who Will Be Called for Live Testimony

| Witness | Summary of Testimony |
|---|---|
| **Kinam Park** | Non-infringement; non-infringing alternatives |
| **Edith Mathiowitz** | Invalidity; prior commercial use; conception and reduction to practice of X-ray visible Implanon, including Organon's development, design, research, and testing efforts; development of Nexplanon, including the '037 patent |
| **Mark Seigel** | Knowledge and practices of healthcare providers and patients with respect to contraceptives, including Implanon and Nexplanon; damages |
| **Mark Schwartz** | Regulatory history of Implanon and Nexplanon; non-infringing alternatives; damages |
| **Christopher Vellturo** | Damages |

### 4.    Expert Witnesses Who May Be Called for Live Testimony

| Witness | Summary of Testimony |
|---|---|
| **Andrea Davis** | IPR estoppel |

## VII.    EXHIBITS

The parties agree that only the exhibits listed on the parties' exhibit lists shall be introduced at the time of trial.  The parties are not required to list exhibits that will be used, if at all, only for impeachment purposes.

### A.    Plaintiff's Exhibits

A list of Microspherix's exhibits that it may offer into evidence, including Organon's objections and a key to those objections, is attached at Exhibit 7A.

### B.    Defendant's Exhibits

A list of Organon's exhibits that it may offer into evidence, including Microspherix's objections and a key to those objections, is attached at Exhibit 7B.

## VIII.    LEGAL ISSUES

### A.    Plaintiff's Statement of the Legal Issues in this Case

Microspherix's statement of the legal issues in this case is attached at Exhibit 8A.

### B.    Defendant's Statement of the Legal Issues in this Case

Organon's statement of the legal issues in this case is attached at Exhibit 8B.

## IX.    MISCELLANEOUS

### A.    Order of Presentation

Subject to the Court's approval, the parties have agreed as follows:

1.    Microspherix will present its opening statement first, followed by Organon's opening statement.

2.    Microspherix has the burden of proof on patent infringement and damages.  As such, Microspherix will present its case-in-chief on those issues first, followed by Organon's case-in-chief in response to Microspherix.

3.      Organon has the burden of proof on invalidity.  As such, invalidity will be part of Organon's case-in-chief.

4.      Microspherix will then present its case in response to Organon's invalidity case [**Microspherix's Position:** and then, as needed, rebuttal with respect to issues first raised in Organon's case, including potentially evidence relating to non-infringing alternatives].

[**Organon's Position**: For the avoidance of doubt, Microspherix will not be permitted to present evidence in its rebuttal case evidence related to infringement and damages (including noninfringing alternatives), which are issues for which Microspherix bears the burden of proof. *See, e.g.*, *MHL Custom, Inc. v. Waydoo USA, Inc.*, 1:21-cv-00091-RGA, Updated Final Joint Pretrial Order, D.I. 212, at 20–21 (D. Del. 2023) (rejecting *stipulated* proposal that patentee be permitted to present a reply on infringement and damages and limiting patentee's rebuttal case to invalidity); *Eagle View Techs., Inc., v. Xactware Solutions, Inc.*, No. 1:15-cv-07025, Proposed Joint Final Pretrial Order, D.I. 674, at 10–11 (D.N.J. June 3, 2019) (patentee's rebuttal case limited to validity); *AstraZeneca Pharms. LP v. Sandoz Inc.*, No. 14-cv-03547-RMB-KMW, Joint Final Pretrial Order, D.I. 308, at 23 (D.N.J. 2016) (patentee's rebuttal case limited to validity); *Sun Pharma Global FZE v. Lupin Ltd.*, No. 3:18-cv-2213-FLW-TJB, D.I. 223, Final Pretrial Order, at 74 (D.N.J. 2021) (patentee's rebuttal case limited to invalidity and unenforceability, defendant permitted rebuttal case on secondary considerations); *Forest Laboratories, LLC f/k/a Forest Laboratories, Inc. et al v. Prinston Pharmaceutical Inc.*, 2:17-cv-10230-ES-MAH, Revised Sealed Final Pretrial Order (Public Redacted Version), at 60 (D.N.J. 2021) (patentee's rebuttal case limited to validity, defendant permitted rebuttal case on secondary considerations).  Alternatively, to the extent Microspherix is permitted to address infringement and damages in its rebuttal case, including callings Drs. Sheldon and/or Weinstein for the first time on those issues, Organon is

27

permitted a rebuttal case on invalidity and to respond to Drs. Sheldon and/or Weinstein.  *See, e.g.*, *Supernus Pharms., Inc. v. TWI Pharms., Inc.*, No. 15-369 (RMB) (JS), Joint Final Pretrial Order, D.I. 235-2, at 170 (ECF page 69 of 172) (D.N.J. March 28, 2017) (plaintiff's rebuttal case entailed infringement and validity, defendant permitted a reply case on invalidity); *ViaTech Technologies, Inc. v. Adobe Inc.*, 1:20-cv-00358-RGA-JLH, Amended Final Pretrial Order, D.I. 267, at 21–22 (D. Del. 2023) (patentee's rebuttal case entailed infringement, willfulness, and damages, defendant permitted rebuttal case on invalidity and other defenses).]

5.      **Microspherix's Statement on the Order of Presentation of Expert Witnesses:** Microspherix has not yet decided whether to call Dr. Weinstein (an OB/GYN) or Dr. Sheldon (an FDA expert) in its case-in-chief or its rebuttal case.  Both of these witnesses address among other issues those relating to non-infringing alternatives, which is an issue on which Organon bears the burden of proof.  *See, e.g.*, SPEX Techs. v. Apricorn, Inc., 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020) ("The accused infringer bears the burden of proving the existence of non-infringing alternatives.").  Microspherix certainly has no intention of presenting any duplicative testimony in its rebuttal case, but to the extent Organon presents evidence on non-infringing alternatives that Microspherix has not addressed in its case-in-chief, Microspherix reserves the right to call one or both of these witnesses in rebuttal.

6.      **Organon's Statement on the Order of Presentation of Expert Witnesses:** The issue of which non-infringing alternatives were available at the time of the hypothetical negotiation and their impact on the hypothetical negotiation is part of the reasonable royalty analysis. *Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 9038509, at *10–11 (N.D. Cal. Apr. 27, 2021) (disagreeing with *SPEX* because non-infringing alternatives are relevant to two of the *Georgia-Pacific* factors); *RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, No. CV 19-1515-RGA, 2022 WL 17084156, at *4

(D. Del. Nov. 18, 2022) (holding that, for a "royalty analysis under the *Georgia-Pacific* factors, a defendant does not have a burden of proving non-infringing alternatives). Microspherix bears the burden of proving damages, including what the reasonable royalty should be. *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1376 (Fed. Cir. 2002) (the patentee "had the burden of proving the amount of reasonable royalty damages it is entitled to recover"). Microspherix's opening damages and technical reports acknowledge this, as both—out of necessity—address noninfringing alternatives, and Ms. Schenk considers these non-infringing alternatives as part of the *Georgia Pacific* factors she uses to determine the purported reasonable royalty rate. Schenk Opening Report ¶¶ 206–232, 247; Cima Opening Report ¶¶ 4, 25, 259–260. Drs. Sheldon's and Weinstein's expert reports attempt to support this earlier analysis of noninfringing alternatives, but Dr. Weinstein's reports were not served until the rebuttal and reply round of expert reports on July 14, 2023 and August 4, 2023, and Dr. Sheldon's expert report was not served until the reply round of expert reports on August 4, 2023, however. It would be improper and unfair to permit Drs. Sheldon and Weinstein to testify regarding noninfringing alternatives in Microspherix's rebuttal case while providing Organon no opportunity to respond to their testimony. Although these experts' reports should be stricken in their entirety, if they are not stricken, they must provide their opinions purporting to support Ms. Schenk's analysis and opinions (to the extent they are not excluded) in Microspherix's affirmative case.

### B. Time Allotted to Each Party

1.    Subject to the Court's approval, the parties will limit their opening statements to 30 minutes each.

2.    Subject to the Court's approval, the parties will have equal time to present their cases.

3.      Subject to the Court's approval, the parties will provide closing statements of up to 60 minutes for Microspherix (which may choose to reserve some of that time for rebuttal) and 60 minutes for Organon.

4.      Trial will last up to two weeks, from October 16, 2023 to October 27, 2023.

**C.      Witnesses**

5.      The parties agree that any fact witnesses, except for a party representative attending trial, appearing in person shall be sequestered until he/she testifies, and any trial testimony preceding the testimony of that fact witness cannot be disclosed to that witness directly or indirectly.  The parties agree that all witnesses may be present for opening statements.

6.      Expert witnesses may be present in the courtroom at any time during trial.

7.      The parties agree that witnesses will not discuss their testimony or otherwise communicate with counsel while they are on cross-examination.

**D.      Trial Stipulations**

8.      **Witnesses**.  By 6:00 pm Eastern Time three calendar days before the expected trial day on which a witness will be called to testify, each party will identify by email to the opposing party the witnesses it intends to call on that trial day, the anticipated order in which those witnesses will be called, and whether those witnesses will be called live or by deposition (if by deposition designations are to be played in court).  For example, for witnesses expected to be called on Monday, October 16, 2023, notice shall be given by 6:00 pm Eastern Time on Friday, October 13, 2023.

9.      **Playing of Deposition Designations**.  All portions of the testimony designated by any party will be played at the same time, including the parties' affirmative designations and

counter-designations. All designated testimony will be introduced in the sequence in which the testimony was originally given.

10.    **Documents**. Legible photostatic or other copies of documents (or portions thereof) may be marked for identification, and offered and received in evidence at the trial, with the same force and effect as the originals, subject to correction should error appear and subject to any and all objections as could be made to the original thereof. The originals of such copies shall be available for inspection at the trial upon reasonable notice.

11.    **Exhibits**

a.    Any exhibit listed by a party may be offered as an exhibit by that party or by another party, subject to any evidentiary objections by the opposing party.

b.    Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

c.    The parties agree that the listing of an exhibit by a party does not waive any objections that such party may have to the use of the same exhibit by another party.

d.    The parties agree that any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material.

e.    The parties agree they will not dispute the authenticity of any document that was produced during discovery, which on its face appears to have been authored by an employee or officer of the producing party, or by a third-party engaged by the producing party in the ordinary course of business, and that such documents shall be deemed prima facie authentic, subject to the right of the party against whom

such a document is offered to adduce evidence to the contrary and subject to any

contrary determination or ruling by the Court.

f.     Plaintiff's demonstratives will be designated with PDX numbers.

g.     Defendant's demonstratives will be designated with DDX numbers.

h.     The parties agree that if any party removes or otherwise withdraws an exhibit

from its Exhibit List, another party may amend its Exhibit List to include that

same exhibit.  The parties also agree that the parties may make objections to such

exhibit, other than an objection based on untimely listing.

12.    **Deposition Designations**.

a.     The introducing party will identify the particular designated deposition testimony

(by page and line) from its previous designations that is actually intended to be

played or read at trial, or a disclosure that all pages and lines previously

designated will be played, by 6:00 p.m. Eastern Time three calendar days before

introducing the deposition testimony.  For avoidance of doubt, if the introducing

party intends to play or read designated testimony on Tuesday, October 17, 2023,

notice shall be given by 6:00 p.m. Eastern Time on Saturday, October 14, 2023.

The advanced notification provision for designations does not apply to

designations to be used for impeachment during cross-examination.

b.     By 6:00 p.m. Eastern Time two calendar days before introducing the deposition

testimony, the other party will identify any specific pages and lines from its

counter-designations or the other party's designations that the other party has not

elected to play at trial that the counter-designating party wishes to be introduced,

pursuant to Fed. R. Civ. P. 32(a)(6), and any testimony to which it continues to

object.  For avoidance of doubt, if the introducing party intends to play or read designated testimony on Tuesday, October 17, 2023, notice of counter-designations and remaining objections shall be given by 6:00 p.m. Eastern Time on Sunday, October 16, 2023.

c.    By 8:00 p.m. Eastern Time two days before introducing the deposition testimony, the introducing party will identify any counter-designated testimony to which it continues to object.  For avoidance of doubt, if the introducing party intends to play or read designated testimony on Tuesday, October 17, 2023, remaining objections to counter-designated testimony shall be given by 8:00 p.m. Eastern Time on Sunday, October 16, 2023.

d.    By 9:00 p.m. Eastern Time two days before introducing the deposition testimony, the parties shall meet and confer to resolve any objections to designated deposition testimony.  For avoidance of doubt, if the introducing party intends to play or read designated testimony on Tuesday, October 17, 2023, the parties shall meet and confer by 9:00 p.m. Eastern Time on Sunday, October 16, 2023.

e.    If objections to disputed testimony are not resolved by this process, the parties shall present such objections to the Court on the afternoon before the day the testimony is expected to be played by the jury for resolution by the Court.

f.    If a party opts to introduce deposition testimony, any counter-designation of that same witnesses' testimony must be submitted in the same medium.  Any objections or attorney colloquy included in the designated testimony shall be removed unless required to clarify the record (i.e., discussion of scope of 30(b)(6) testimony).

33

g.      The party electing to introduce deposition testimony shall be responsible for

putting together the video file of the deposition designations and any counter

designations, and the video files must be exchanged by 8:00 p.m. Eastern Time

the day before the deposition testimony will be introduced, and shall revise the

video file as necessary based on the Court's rulings on any objections.

13.     **Exhibits Introduced Through Deposition Designations**. If designated testimony

to be played in open court includes the use of an exhibit to which a party has asserted an objection,

such objections will be handled in the same manner as the procedures set forth for the resolution

of objections to exhibits to be used on direct examination pursuant to Section IX.D, Paragraph 14

below.

14.     **Exchange of Exhibits for Direct Examination or Opening Statements**.

a.      For exhibits to be used in connection with direct examination of witnesses, both

fact and expert, each party will provide to the opposing party a list of all exhibits

to be used, including previously admitted exhibits but excluding demonstrative

exhibits, by 6:00 p.m. Eastern Time two calendar days before they will be used at

trial.  For demonstrative exhibits to be used in connection with direct examination

of witnesses, both fact and expert, each party will provide to the opposing party a

copy of the demonstrative exhibit one calendar day before it will be used at trial.

For example, for exhibits to be used in a direct examination of a witness who is

disclosed as testifying on Monday, October 16, 2023, the witness' exhibits,

excluding demonstrative exhibits, shall be disclosed by 6:00 p.m. Eastern Time on

Saturday, October 14, 2023 and demonstrative exhibits shall be disclosed by 6

p.m. Eastern Time on Sunday, October 15, 2023.  The identification shall be by

email, except if demonstrative exhibits cannot be sent via email due to size limitations, they may be alternatively sent via FTP or by courier on a DVD, CD or USB drive. The party receiving identification of exhibits intended for use in direct examination will inform the identifying party of any objections by 8:00 p.m. Eastern Time the same day the exhibits are disclosed. The parties will meet and confer as soon as possible thereafter to resolve such objections, but in any event by 9:00 p.m. Eastern Time that same day.

b.   For any demonstrative exhibit and any trial exhibit that will be excerpted or displayed in connection with opening statements: each party will provide to the opposing party a copy of the demonstrative exhibit and a list of all exhibits that will be excerpted or displayed by 12:00 PM Eastern Time two days before opening statements. The exchange shall be by email, except if demonstrative exhibits cannot be sent via email due to size limitations, they may be alternatively sent via FTP or by courier on a DVD, CD or USB drive. The opposing party will inform the party identifying the exhibits of any objections by 4:00 p.m. Eastern Time that same day, and the parties will meet and confer as soon as possible thereafter to resolve such objections, but in any event by 7:00 p.m. Eastern Time that same day. If good faith efforts to resolve the objections fail, the party objecting to the demonstratives may bring its objections to the Court's attention prior to the opening statement.

c.   The party seeking to use a demonstrative exhibit will provide a color representation of the demonstrative to the other side in PDF, PowerPoint, or some other commonly viewable format via email. However, for video or animations,

the party seeking to use the demonstrative will provide it to the other side via FTP or on a DVD, CD, or USB drive if it cannot be sent via email due to size limitations.  For irregularly sized physical demonstrative exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 inch copies of the exhibits and make the original available for inspection by the opposing party.

d.      There is no obligation to disclose demonstratives that will be created during live testimony or that will be used or created during cross examination.

e.      The advanced notification provision for exhibits does not apply to exhibits to be used during cross-examination, whether for impeachment or to be offered into evidence.

f.      Any party may use an exhibit that is listed on the other party's exhibit list, subject to the other party's opportunity to object to its introduction and subject to all applicable evidentiary objections.  Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

15.     **Objections to Exhibits to be used on Direct Examination**. If good faith efforts to resolve the objections fail, the party objecting to the exhibits may bring its objections to the Court's attention prior to or when the exhibit is offered into evidence.

16.     **Protective Orde**r. The Court has entered a Discovery Confidentiality Order to safeguard the confidentiality of certain of the parties' business and technical information, as well as that of third parties.  The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests that a particularly sensitive portion be sealed.  If

a party makes such a request, it shall be responsible for bringing the issue promptly to the Court's attention for a ruling so as not to delay the trial.

### E.    Other Stipulations and Agreements

17.    Pursuant to Federal Rule of Civil Procedure 615, the parties may each have one corporate representative attend the entire trial, including any closed portions.  The corporate representative need not have been listed in the Protective Order.  However, if a corporate representative is not listed in the Protective Order, that representative may not have access to the other party's confidential information except for that presented at trial.  The corporate representatives must agree to maintain in confidence the confidential information of the opposing party and all third parties that is presented during any closed portion of the trial, and to use such information only in connection with this litigation and not for any other purpose.

18.    The parties will not offer any arguments, evidence, or testimony, or solicit the same, regarding the parties' use or alleged use, or the presence in the courtroom, of jury consultants, jury studies, focus group studies, or shadow juries.

19.    The parties propose playing the Federal Judicial Center's video "The Patent Process: An Overview for Jurors" as part of the Court's preliminary jury instructions.  The time for this video will not be charged against either party's trial presentation time.

## X.    JURY TRIALS

1.    Trial is scheduled to commence on October 16, 2023 and may proceed until October 27, 2023 (D.I. 201, 244).

2.    Microspherix expects that it will need no more than 12 hours to present its case (including cross examination), excluding opening and closing statements.  Organon expects that it

will need approximately 24 hours to present its case (including cross examination), excluding opening and closing statements.

## CONCLUDING CERTIFICATION

We hereby certify by the affixing of our signatures to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court.  Further, it is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

Dated: September 28, 2023

By: /s/  *Christopher R. DeCoro*
Christopher R. DeCoro
Sam Kwon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
christopher.decoro@kirkland.com
sam.kwon@kirkland.com
Brian D. Sieve, P.C.
Marcus E. Sernel, P.C.
Eric D. Hayes, P.C.
Tasha F. Gerasimow
Xaviere Giroud
Sadaf Misbah
Tareq M. Alosh
KIRKLAND & ELLIS LLP
300 N. LaSalle Dr.
Chicago, IL 60654
(312) 862-2000
bsieve@kirkland.com
msernel@kirkland.com
ehayes@kirkland.com
tasha.gerasimow@kirkland.com
xaviere.giroud@kirkland.com
sadaf.misbah@kirkland.com
tareq.alosh@kirkland.com
Diva R. Hollis
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, N.W.

By: /s/ *Cynthia S. Betz*
Cynthia S. Betz
Mark M. Makhail
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry St.
Newark, New Jersey 07102
Tel: (973) 622-4444
cbetz@mccarter.com
mmakhail@mccarter.com

Y. Ernest Hsin (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Tel: (415) 393-8200
ehsin@gibsondunn.com

Mark Reiter (*admitted pro hac vice*)
Veronica S. Moyé
Betty X. Yang (*admitted pro hac vice*)
Ashbey N. Morgan (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel: (214) 698-3100
mreiter@gibsondunn.com
vmoye@gibsondunn.com
byang@gibsondunn.com
anmorgan@gibsondunn.com

Washington, D.C. 20004
(202) 389-5000
diva.hollis@kirkland.com

Andrew P. Blythe (*admitted pro hac vice*)
Nathaniel R. Scharn (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
Tel: (949) 451-3800
ablythe@gibsondunn.com
nscharn@gibsondunn.com

 

    Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this <u>5th</u> day of <u>October</u>, 2023.

 

s/*James B. Clark, III*
_____
Hon. James B. Clark, III, U.S.M.J.
UNITED STATES DISTRICT JUDGE
United States District Court
For the District of New Jersey